UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


FREDERICK L. SNELL,

            Petitioner,

v.                                        Case No. 3:03-cv-602-J-20TEM

JAMES V. CROSBY, etc.;
et al.,

            Respondents.

_____

**ORDER**

**I. Status**

Petitioner Frederick L. Snell, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on July 24, 2003. Petitioner challenges a 1998 state court (Clay County, Florida) judgment of conviction for sexual battery upon a child twelve years of age or older but under eighteen years of age by a person in familial or custodial authority on the following grounds:  (1) his due process right was violated when a prison releasee reoffender sentence was imposed for an offense committed prior to the effective date of the statute; (2) the Prison Releasee Reoffender Act is unconstitutional because the Act

violates the single subject rule, separation of powers and equal protection of the law and is void for vagueness; (3) ineffective assistance of trial counsel for counsel's failure to object or declare a mistrial upon the admission of a hearsay statement; (4) ineffective assistance of trial counsel for counsel's failure to object to the admission of dissimilar collateral evidence; (5) ineffective assistance of trial counsel for counsel's depriving Petitioner of appellate review; (6) ineffective assistance of trial counsel for counsel's inadvertently informing the jury of Petitioner's previous arrest for an unrelated offense; (7) ineffective assistance of trial counsel for counsel's failure to object to hearsay evidence on Petitioner's character; (8) ineffective assistance of trial counsel for counsel's failure to strike or challenge for cause jurors who were biased or hostile towards Petitioner; (9) ineffective assistance of trial counsel for counsel's depriving Petitioner of his right to testify and erroneously waiving his right to testify; (10) ineffective assistance of trial counsel for counsel's failure to interview, depose or call any of several available witnesses requested by Petitioner; (11) ineffective assistance of trial counsel for counsel's failure to adequately inform Petitioner of the consequences related to sentencing under the Prison Releasee Reoffender Act; (12) ineffective assistance of trial counsel for counsel's failure to object to simple battery as the only

2

instructed lesser offense or to request instructions on an offense one step removed from the charged offense; (13) ineffective assistance of trial counsel for counsel's failure to file an appropriate motion requesting the prosecutor to disclose exculpatory evidence; (14) ineffective assistance of trial counsel for counsel's failure to request that the prosecutor narrow the offense to the exact month and for failure to request that the jury be instructed to specify the exact month within the verdict; (15) Petitioner was tried and convicted while mentally incompetent, thus resulting in a violation of due process; (16) ineffective assistance of trial counsel for counsel's depriving Petitioner of his right to speedy trial; (17) Petitioner was denied due process and a fair trial by counsel's cumulative errors.

Respondents filed an Amended Response to Petition (Doc. #20) (hereinafter Amended Response). They submitted exhibits in support of their Amended Response.[1] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. See Court's Order to Show Cause and Notice to Petitioner (Doc. #5). Petitioner has properly responded to Respondents' Amended Response. This case is now ripe for review.

_____

[1] Respondents have submitted exhibits A-N in support of their Response (Doc. #7) and supplemental exhibits O-Y in support of their Amended Response (Doc. #20). These exhibits will be referred to as "Ex."

## II. Procedural History

On October 8, 1997, Petitioner was charged with three counts of sexual battery, while in a position of familial or custodial authority, on a person twelve years of age or older, but less than eighteen years old. Ex. A. The acts were alleged to have occurred between January 1, 1997, and July 15, 1997. Id. Petitioner was tried by a jury on count one[2] and found guilty on August 13, 1998. Ex. B; Ex. Y, Transcript of the Jury Trial (hereinafter Tr.) at 5. On September 9, 1998, Petitioner Snell was sentenced to thirty (30) years as a Prison Releasee Re-Offender. Ex. C; see http://www.dc.state.fl.us/activeinmates (Florida Department of Corrections website).

On direct appeal, Petitioner, through counsel, raised the following claims: (1) it was fundamental reversible error and a denial of due process to impose a prison releasee reoffender sentence for an offense committed prior to the effective date of the statute, and the sentence is illegal as a result; (2) the trial court erred in denying Petitioner's challenge to the constitutionality of the prison releasee reoffender statute since it violates separation of powers, ex post facto and equal

---

[2] In count one, Petitioner was charged with sexual battery, while in a position of familial or custodial authority, upon Cryssida Tamica Carter, a person twelve years of age or older, but less than eighteen years of age, by placing his penis in or upon the vagina of Cryssida Tamica Carter. Ex. A, Information, filed October 8, 1997.

protection and is void for vagueness; (3) the Prison Releasee Reoffender Act is unconstitutional because the Act included multiple unrelated subjects in one act in violation of the Florida Constituion, and this unconstitutionality of the Act is fundamental error which may be raised for the first time on appeal; and, (4) the trial court committed fundamental reversible error when it failed to grant Petitioner credit for time served prior to sentencing. Ex. O. The State filed an Answer Brief on appeal. Ex. P. On February 28, 2000, the appellate court per curiam affirmed his sentence, stating:

> This appeal arises from Appellant's sentence as a prison releasee reoffender. We reject Appellant's numerous challenges to the constitutionality of section 775.082(8), Florida Statutes (1997). *See Chambers v. State*, 752 So.2d 64 (Fla. 1st DCA 2000); *Turner v. State*, 745 So.2d 351, 352 (Fla. 1st DCA 1999) (citing *Woods v. State*, 740 So.2d 20 (Fla. 1st DCA), *rev. granted*, 740 So.2d 529 (Fla. 1999)). We affirm all other issues without further comment.

> Accordingly, we affirm Appellant's sentence. However, as in *Woods*, we certify the following question to the Florida Supreme Court as a matter of great public importance:

> DOES THE PRISON RELEASEE REOFFENDER PUNISHMENT ACT, CODIFIED AS SECTION 775.082(8), FLORIDA STATUTES (1997), VIOLATE THE SEPARATION OF POWERS CLAUSE OF THE FLORIDA CONSTITUTION?

Snell v. State, 752 So.2d 95 (Fla. 1st DCA 2000); Ex. Q.

On June 15, 2000, the Supreme Court of Florida accepted jurisdiction. Snell v. State, 767 So.2d 461 (Fla. 2000).

Petitioner, through counsel, raised the following issues: (1) the Prison Releasee Reoffender Act delegates judicial sentencing power to the state attorney, in violation of the separation of powers clause of the Florida Constitution and also violates several other constitutional provisions: single subject requirement, cruel and unusual punishment, vagueness, due process, equal protection and ex post facto; (2) if sentencing under the Act is within the trial court's discretion, the case must be remanded for the trial court to exercise that sentencing discretion; (3) it was fundamental reversible error and a denial of due process to impose a prison releasee reoffender sentence for an offense committed prior to the effective date of the statute and the sentence is illegal as a result thereof; and, (4) the court committed fundamental reversible error when it failed to grant Petitioner credit for time served prior to sentencing.  Ex. R.  The State filed an Answer Brief, and Petitioner filed a Reply Brief.  Ex. S; Ex. T.

On February 8, 2001, the Supreme Court of Florida approved the First District Court's opinion, stating:

> We have for review *Snell v. State*, 752 So.2d 95 (Fla. 1st DCA 2000), in which the district court certified the same question of great public importance that it had in *Woods v. State*, 740 So.2d 20 (Fla. 1st DCA 1999) *approved sub nom. State v. Cotton*, 769 So.2d 345 (Fla. 2000).  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.
>
> Snell challenges his thirty-year prison sentence under the Prison Releasee Reoffender Act (the "Act") on several grounds, all of

which have been previously addressed by other opinions of this Court.   *See Grant v. State*, 770 So.2d 655 (Fla. 2000) (rejecting an ex post facto challenge to the Act and holding that the Act violates neither the single subject rule for legislation nor principles of equal protection); *State v. Cotton*, 769 So.2d 345 (Fla. 2000) (holding that the Act violates neither separation of powers nor principles of due process by allowing a "victim veto" that precludes application of the Act, as well as holding that the Act is not void for vagueness and does not constitute a form of cruel or unusual punishment).

We also find the other issues raised by Snell lacking in merit and decline to comment further.   Accordingly, we approve the decision in *Snell*.

It is so ordered.

Snell v. State, 777 So.2d 972 (Fla. 2001) (footnotes omitted; Ex. U.   The mandate issued on March 1, 2001.   Ex. V.

On September 14, 1998 (prior to appealing his conviction and sentence on direct appeal)[3], Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he alleged that he was receiving psychotropic drugs for a mental disorder and that the judge should have appointed at least two experts to determine competency.   Ex. D at 1-3.   One week later on September 21, 1998, Petitioner filed a second *pro se* motion for post conviction relief pursuant to Rule 3.850, in which he set forth the following allegations:   (1) counsel was ineffective in

---

[3] On September 29, 1998, a timely notice of appeal directed to the underlying judgment and sentence was filed.

that he did not file any motions to have Petitioner evaluated for competency and did not make arrangements for Petitioner to be seen by a second expert; (2) counsel was ineffective in failing to strike a retired policeman from the jury when Petitioner requested that he do so; (3) counsel was ineffective for coercing Petitioner to not testify and for stating that "the jury would disfavor him" because of his past felonies; (4) Petitioner was not properly notified under the Prison Releasee Reoffender Act; and, (5) the Prison Releasee Reoffender Act does not apply to him. Id. at 4-9.

On September 28, 1998, the trial court denied the motion to vacate sentence[4], stating:

> The Court has before it Defendant's Motion to Vacate Sentence. The sentence was fair and appropriate. No legal grounds have been shown why that sentence should be vacated, and the motion is therefore without merit.

Id. at 10.

On February 14, 2003, Petitioner petitioned the appellate court for a belated appeal. Ex. E. On July 17, 2003, Petitioner was granted a belated appeal. Snell v. State, 849 So.2d 1139 (Fla. 1st DCA 2003); Ex. D at 12-16. In granting the petition for a belated appeal, the appellate court stated:

---

[4] In the second motion, Petitioner states that "[t]here is a previous post conviction motion to vacate sentence" and "[t]his motion is initiated to enhance the success of the prior motion." Ex. D at 5, paragraph 3. In denying relief in its September 28, 1998, Order, it appears that the trial court construed the second motion as a supplement to the first motion.

8

By petition filed with this court in February 2003, Frederick L. Snell seeks a belated appeal of a September 28, 1998, order denying his motion to vacate sentence. Under the peculiar facts of this case, we grant the petition.

Snell was sentenced on September 9, 1998, and on September 14, 1998, he filed a pro se motion to vacate sentence, seeking relief pursuant to Florida Rule of Criminal Procedure 3.850. One week later, he filed a second motion to vacate sentence. It appears that the trial court treated the second motion as a supplement to the first and denied relief through its order of September 28, 1998 (hereafter referred to as the "September 1998 order"). The following day, September 29, 1998, a timely notice of appeal directed to the underlying judgment and sentence was filed. Snell's conviction and sentence were affirmed by this court and that decision was approved by the supreme court in *Snell v. State*, 752 So.2d 95 (Fla. 1st DCA 2000), *approved*, 777 So.2d 972 (Fla. 2001). Mandate in the direct appeal ultimately issued on March 5, 2001[5].

According to petitioner's sworn allegations, he was not timely furnished a copy of the September 1998 order and did not learn of its existence until after his direct appeal became final in March 2001. In the interim, unaware that his motions to vacate sentence had been disposed of, he filed a motion in March 1999 seeking to withdraw the motions without prejudice. By order of April 9, 1999, the trial court granted Snell's request to withdraw the rule 3.850 motions he had filed in September 1998, but its order made no mention of the fact that those motions had already been denied. In support of his request that he now be granted a belated appeal of the September 1998 order, Snell points out that he did not receive that order

---

[5] The mandate was issued on March 1, 2001. Ex. V.

until more than two years after the time for
initiating an appeal had expired, and that the
order did not advise him of his appellate
rights as required by rule 3.850(g).    He
further asserts that he was misled by the
April 1999 order, thereby frustrating his
right to timely seek relief from this court.

Under Florida Rule of Appellate Procedure
9.141(c)(4)(A), a petition seeking belated
appeal must generally be filed within two
years after the time for filing the notice of
appeal expires, and Snell's petition in this
case falls outside of this time period.
However, the two year limitation may be
overcome by a showing that the petitioner was
not advised of his right to appeal and should
not have ascertained the existence of that
right by the exercise of due diligence.  *See*
Fla. R.App. P. 9.141(c)(4)(A)(i) and (ii).
Here, Snell's sworn allegations and the
attachments to his petition establish that he
was not advised of his right to appeal in the
September 1998 order, and more importantly, he
was unaware that any right to appeal had
accrued until he received the order in March
2001.    While in ordinary circumstances he
likely would be faulted for not exercising due
diligence to determine the disposition of his
motions during the two year period
contemplated by the rule, petitioner had no
reason to make such an inquiry in this case
because he believed that in accordance with
the April 1999 order, he had been permitted to
withdraw his motions to vacate sentence.
Accordingly, we conclude that Snell has pled
an adequate basis for avoiding the two year
time limitation imposed by the rule.    We
further conclude that he otherwise timely
sought relief to the extent his petition
seeking belated appeal was filed within two
years of his discovery of the existence of
September 1998 order.  *Cf. Adams v. State*, 543
So.2d 1244 (Fla. 1989) (holding that a rule
3.850 motion based upon new facts or a
significant change in the law must be filed
within two years of the time such facts become
known or such change is announced).

. . . .

> Accordingly, the petition seeking a belated appeal of the order of September 28, 1998, denying petitioner's motion to vacate sentence in Clay County Circuit Court case number 97-1108-CF-A, is granted. Upon issuance of mandate in this cause, a copy of this opinion shall be provided to the clerk of the circuit court for treatment as a notice of appeal. *See* Fla. R.App. P. 9.141(c)(5)(D).

Snell, 849 So.2d at 1140-41. The mandate issued on August 4, 2003. Ex. D at 11.

In his Initial Brief to the appellate court, Petitioner requested the appellate court to issue an order granting dismissal of the September 1998 motions for post conviction relief and reverse the trial court's September 28, 1998, order with directions to permit Petitioner to refile his Rule 3.850 motion. Ex. F at 5. On December 24, 2003, the appellate court per curiam affirmed without a written opinion. Ex. W. The mandate issued on February 17, 2004. Ex. X.

In the meantime, on June 7, 2001, Petitioner had filed a third motion for post conviction relief, raising sixteen grounds, most of which are premised upon allegations of ineffective assistance of

trial counsel.[6]  Ex. G.  On May 7, 2002, the trial court denied the

motion as procedurally barred, stating:

> This matter came before this Court on
> Defendant's Motion for Post Conviction Relief
> filed pursuant to Florida Rule of Criminal
> Procedure 3.850 on June 8, 2001.
>
> On September 9, 1998, following a jury
> trial, Defendant was convicted of one count of
> Sexual Battery Familial or Custodial and was
> sentenced as a Prison Releasee Re-Offender to
> a term of thirty (30) years of incarceration.
> (Exhibit "A.")  Defendant's conviction and
> sentence were affirmed on appeal through a
> Mandate issued on March 6, 2001.  (Exhibit
> "B.")
>
> In the instant Motion, Defendant raises
> sixteen grounds for relief, most of which are
> premised upon allegations of ineffective
> assistance of counsel.  Initially, this Court
> notes that Defendant has previously filed
> Motions pursuant to Florida Rule of Criminal
> Procedure 3.850, on September 14, 1998, and
> September 21, 1998.  (Exhibit "C.")  The Court
> denied Defendant's Motion on September 28,
> 1998.     (Exhibit    "D.")     **Accordingly,
> Defendant's instant Motion is procedurally
> barred as an abuse of process in that
> Defendant's instant claims could have and
> should have been raised in Defendant's
> previous Motion.**  Zeigler v. State, 632 So.2d
> 48 (Fla. 1993); Foster v. State, 614 So.2d 455
> (Fla. 1992).
>
> This Court notes that Defendant filed a
> Motion to Withdraw his previous Motions for

---

[6] In the motion, Petitioner acknowledges that he filed two
prior motions for post conviction relief; however, he concludes
that the trial court granted his motion to withdraw the motions
without prejudice.  Ex. G at 2; Ex. M; Ex. N; Petitioner's Exhibits
(Doc. #9), Exhibit D.  Petitioner fails to state that the motions
had been previously denied on their merits by the trial court on
September 28, 1998.  See Ex. D at 10.

> Post Conviction Relief on March 26, 1999,
> approximately six months after those Motions
> were denied.[7]   (Exhibits "D," "E.")    The
> Court granted Defendant's request to withdraw
> his Motions on April 13, 1999.  (Exhibit "F.")
> This Court notes that the Court was without
> jurisdiction to grant Defendant's Motion to
> Withdraw his Motions for Post Conviction
> Relief since Defendant's direct appeal was
> pending.   (Exhibits "B," "G.["])    As such,
> Defendant's request to withdraw those Motions
> should have been dismissed for lack of
> jurisdiction.  Nelson v. State, 796 So.2d 1244
> (Fla. 1st DCA 2001); Burch v. State, 721 So.2d
> 1198 (Fla. 1st DCA 1998).   Additionally, this
> Court notes that Defendant's request to
> withdraw his Motions should not have been
> granted since the Court had previously entered
> an order denying Defendant's motions.

Ex. H (emphasis added).  On appeal, Petitioner filed a brief.  Ex.

I; Ex. J.   On January 9, 2003, the appellate court per curiam

affirmed without a written opinion.  Ex. K.  The mandate issued on

February 4, 2003.  Ex. L.

The Petition for Writ of Habeas Corpus (dated July 18, 2003)

and filed in this Court on July 24, 2003, is timely filed.

Response at 7-8.

### III. THE JURY TRIAL

The victim (Cryssida Tamica Carter), who was fifteen years old

at the time of the crime and sixteen years old at the time of the

trial, testified that Petitioner was living with her mother, her

siblings and her at the time of the incidents and that her mother

and Petitioner were boyfriend and girlfriend.  Tr. at 59-61.  She

---

[7] Ex. M; Ex. N; Petitioner's Exhibits (Doc. #9), Exhibit D.

stated that Petitioner "tried to play a father role" to her and her siblings.  Id. at 61.  On one occasion, she wanted to go to her boyfriend's house.  Id. at 53, 63-64.  However, it was late at night, probably about 12:30 or 1:00 a.m., so she asked Petitioner if she could go, and he said that before she went that she "had to do something for him."  Id. at 64.  She left to see her boyfriend, but when she returned, Petitioner told her that she had to have sex with him or he would tell her mother that she had "sneaked over" to see her boyfriend.  Id. at 64-65.  They had sexual intercourse on the Petitioner's car outside in the car porch, while the other family members were asleep inside the house.  Id. at 65.

On another occasion, the victim wanted to go to a swimming pool with her friend; however, Petitioner told her that the only way she could go would be if she had sex with him.  Id.  Since "it was really hot that day" and "we really wanted to go," she and her friend went to the pool.  Id.  When she returned home that evening, the victim and Petitioner had sexual intercourse on the carpet in the livingroom.  Id. at 65-66.  While they were engaged in this act, the victim's sister (Quianna) walked into the room.  Id. at 66.  The victim was upset, "immediately got up and ran back there" and told her sister that he had made her do it.  Id.  These sexual acts between the victim and Petitioner occurred three times, and she never told anyone.  Id.

On July 10, 1997, the victim became upset when Petitioner and her mother argued and Petitioner kept closing the door and locking her siblings out of the house. Id. at 67, 70, 73, 82. She grabbed a sledgehammer out of the china cabinet, walked to the front of the livingroom and hit Petitioner with the sledgehammer on the back of the head. Id. at 68-70. When the police arrived, she told them that the reason she had hit Petitioner was because "he was locking my brothers and sisters outside and he thought it was funny and I got upset." Id. at 70, 85. As a result of the sledgehammer incident, she was sent to the juvenile detention center for five or six days. Id. at 70-71. She did not tell her mother or the police officers about the sexual abuse. Id. at 71, 73-74. Her mother found out about the sexual abuse because "[t]here was a rumor going around," and her mother, about one week after the victim had entered the detention center, told her that she knew about it. Id. at 71, 73, 88. On cross-examination, the victim affirmed that the sexual acts between her and Petitioner occurred in June of 1997. Id. at 80.

Outside the presence of the jury, the trial court determined that the victim's sister (Quianna) was competent to testify and "well understands the meaning of telling the truth and the wrongfulness of lying." Id. at 99-106. Quianna Divonne Carter (the victim's fifteen year old sister) testified at the trial;

however, prior to her testimony, the trial judge read a cautionary

instruction to the jury:

> Ladies and gentlemen, I'm providing you this cautionary instruction. At this time the evidence you are about to receive concerning evidence of other crimes allegedly committed by the defendant will be considered by you for the limited purpose of proving motive, opportunity, and plan on the part of the defendant and you shall consider it only as it relates to those issues. Note, however, the defendant is not on trial for a crime that is not included in today's case in the Information itself, Count 1. Thank you.

Id. at 109-10.

Quianna Carter testified that Petitioner, after April of 1997, "would take his finger and put it in [her] vagina," and this act occurred more than five times. Id. at 118, 128. During the same time period, she saw Petitioner and Tamica "having sex" on the livingroom floor, while the other family members were asleep. Id. at 119-20. Tamica "cried on me" after Quianna saw them. Id. at 121.

Joyce Carter (the victim's mother) testified that she confronted her daughter (Quianna) because she had heard a rumor, and her daughter then told her about the sexual abuse by Petitioner upon Tamica. Id. at 150, 153-54, 166-67.

After the State rested its case, the defense moved for a judgment of acquittal, which was denied. Id. at 177-78. The court questioned Petitioner, and Petitioner affirmed that it was his decision not to testify on his own behalf. Id. at 181-82. The

16

trial judge then concluded that Petitioner knowingly and
intelligently had waived his right to testify on his own behalf.
Id. at 182. The trial judge, after a break in which Petitioner
again conferred with counsel, inquired again as to Petitioner's
decision to not testify. Id. at 185-86. Petitioner confirmed that
it was his desire to not testify on his own behalf. Id. at 187.

The jury found Petitioner guilty as charged of sexual battery
upon a child twelve years of age or older but under eighteen years
of age by a person in familial or custodial authority. Id. at 231.
Petitioner was sentenced to thirty (30) years as a Prison Releasee
Re-Offender. Ex. C; see http://www.dc.state.fl.us/activeinmates
(Florida Department of Corrections website).

## IV. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the
reasons set forth more fully below, concludes Petitioner is not
entitled to an evidentiary hearing. A habeas corpus petitioner is
entitled to an evidentiary hearing in federal court if he alleges
facts which, if proven, would entitle him to habeas corpus relief.
Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999)
(citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th
Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here,
the pertinent facts of the case are fully developed in the record
before the Court. Smith, 170 F.3d at 1054 (stating that a district
court does not need to conduct an evidentiary hearing "if it can be

17

conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### V. STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA). Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the
> authority of the federal courts to consider

18

applications for writs of habeas corpus submitted by state prisoners. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996. AEDPA applies to all petitions filed after its effective date. . . .

AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases. <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Subsection (d) of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact. Section 2254(e)(1) provides that "a determination of a factual issue made

> by a State court shall be presumed to be
> correct.  The applicant shall have the burden
> of rebutting the presumption of correctness by
> clear and convincing evidence." 28 U.S.C. §
> 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003)

(footnote omitted), cert. denied, 125 S.Ct. 44 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more
deferential standard for federal court review of state court
adjudications: "[u]nless a state court decision is directly
contrary to Supreme Court case law, we review state court findings
of fact and conclusions of law for reasonableness." Van Poyck v.
Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per
curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003);
Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that
the Ohio Court of Appeals' decision was not "contrary to" or an
"unreasonable application" of clearly established federal law and
stressing "the limits imposed on federal habeas review by 28 U.S.C.
§ 2254(d)").

The "contrary to" and "unreasonable application" clauses have
independent meaning and provide separate bases for federal habeas
review:

> "Under the 'contrary to' clause, a
> federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite
> to that reached by this Court on a question of
> law or if the state court decides a case
> differently than this Court has on a set of
> materially indistinguishable facts."
> Williams, 529 U.S. at 412-13, 120 S.Ct. at

1523 (O'Connor, J., concurring). The
"contrary to" clause "suggests that the state
court's decision must be substantially
different" from the controlling legal
precedent. <u>Fugate v. Head</u>, 261 F.3d 1206,
1216 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, --- U.S.
---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002)
(quoting <u>Williams</u>, 529 U.S. at 405, 120 S.Ct.
at 1519). A state court's decision that
applies the correct legal rule would not fit
within the "contrary to" clause even if the
federal court might have reached a different
result relying on the same law. <u>See</u> <u>Williams</u>,
529 U.S. at 404-06, 120 S.Ct. at 1519-20
(O'Connor, J., concurring).

  . . . .

"Under the 'unreasonable application' clause,
a federal habeas court may grant the writ if
the state court identifies the correct
governing legal principle from this Court's
decisions but unreasonably applies that
principle to the facts of the prisoner's
case." <u>Williams</u>, 529 U.S. at 414, 120 S.Ct.
at 1523 (O'Connor, J., concurring). In
deciding this issue, the federal court should
consider whether the state court's application
of the law was objectively unreasonable and
should not apply the subjective "all
reasonable jurists" standard. <u>Id</u>. at 409-10,
120 S.Ct. at 1521-22. The Supreme Court
recently adhered to its pronouncements in
<u>Williams</u>, stating that "we stressed in
<u>Williams</u> that an unreasonable application is
different from an incorrect one." <u>Bell v.
Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
L.Ed.2d 914 (2002). The Court further noted
that "a federal habeas court may not issue a
writ under the unreasonable application clause
'simply because that court concludes in its
independent judgment that the relevant state-
court decision applied clearly established
federal law erroneously or incorrectly.'" <u>Id</u>.
(quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct.
at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." McIntyre v. Williams, 216 F.3d 1254, 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's

rationale for such a ruling.  <u>Wright v. Sec'y for the Dep't of</u>
<u>Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S.
906 (2003).  Thus, to the extent that Petitioner's claims were
adjudicated on the merits in the state courts, they must be
evaluated under the new § 2254(d).

### VI. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective
assistance of counsel.  That right is denied when a defense
counsel's performance falls below an objective standard of
reasonableness and thereby prejudices the defense." <u>Yarborough v.</u>
<u>Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).
"[H]indsight is discounted by pegging adequacy to 'counsel's
perspective at the time' . . . and by giving a 'heavy measure of
deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 125 S.Ct.
2456, 2462 (2005) (citations omitted).  If counsel's performance
falls "below the line of reasonable practice, there is a further
question about prejudice, that is, whether 'there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.'" <u>Id</u>. at 2467
(citation omitted).

The Eleventh Circuit has captured the essence of an
ineffectiveness claim:

> [A] petitioner must show that his lawyer's
> performance fell below an "objective standard
> of reasonableness" and that the lawyer's
> deficient performance prejudiced the

23

petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his

lawyer had given adequate assistance. <u>See</u> <u>id</u>.
at 2068.[8]

<u>Van Poyck</u>, 290 F.3d at 1322-23 (footnotes omitted).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting <u>Strickland</u>, 466 U.S. at 687).

## VII. Findings of Fact and Conclusions of Law

### A. Procedural Default

Petitioner's grounds three through seventeen were raised in his third motion for post conviction relief, which was properly denied as procedurally barred as an abuse of process. However, since allegations relating to grounds eight and nine were raised in his second motion for post conviction relief, those claims will be addressed separately in Section VII. C.

As acknowledged by Respondents, grounds three, four, five, six, seven, ten, eleven, twelve, thirteen, fourteen, fifteen,

_____

[8] However, "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." <u>Davis v. Sec'y for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

sixteen and seventeen were raised in the third motion for post conviction relief. Amended Response at 22; Ex. G. The trial court concluded that his motion was procedurally barred as an abuse of process since his claims could and should have been raised in his previous motions for post conviction relief. Ex. H. Upon Petitioner's appeal, the appellate court affirmed. Ex. K.

Procedural default may result from non-compliance with state procedural requirements. See Coleman v. Thompson, 501 U.S. 722, 729-30, reh'g denied, 501 U.S. 1277 (1991). "It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'" Mincey v. Head, 206 F.3d 1106, 1135-36 (11th Cir. 2000) (quoting Coleman, 501 U.S. at 750 and McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992)), cert. denied, 532 U.S. 926 (2001).

> A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) . . . . [W]here the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, Sykes requires the federal court to respect the state court's decision. Atkins v. Singletary, 965 F.2d 952, 956 (11th

26

Cir. 1992), <u>cert</u>. <u>denied</u>, 515 U.S. 1165, 115
S.Ct. 2624, 132 L.Ed.2d 865 (1995); <u>Meagher v.
Dugger</u>, 861 F.2d 1242, 1245 (11th Cir. 1988).

<u>Bailey v. Nagle</u>, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam).

Thus, these grounds have been procedurally defaulted. "Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." <u>Parker v. Sec'y for the Dep't of Corr.</u>, 331 F.3d 764, 770 (11th Cir. 2003) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977)), <u>cert</u>. <u>denied</u>, 540 U.S. 1222 (2004). "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986)), <u>cert</u>. <u>denied</u>, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

Here, Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Thus, the Court need not address the merits of

grounds three, four, five, six, seven, ten, eleven, twelve, thirteen, fourteen, fifteen[9], sixteen and seventeen.

### B. Grounds One and Two

Petitioner claims his due process right was violated when a prison releasee reoffender sentence was imposed for an offense committed prior to the effective date of the statute (ground one), and the Prison Releasee Reoffender Act is unconstitutional because the Act violates the single subject rule, separation of powers and equal protection of the law and is void for vagueness (ground two). Petitioner raised these grounds on direct appeal both at the appellate level and in the Supreme Court of Florida. Ex. Q; Ex. U.

The federal constitutional claims were rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions.  These grounds should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  The Court must next consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."  Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis

---

[9] See Amended Response at 30-31.

of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[10]

### C. Grounds Eight and Nine

Petitioner claims ineffective assistance of trial counsel for counsel's failure to strike or challenge for cause jurors who were biased or hostile towards Petitioner (ground eight) and ineffective assistance of trial counsel for counsel's depriving Petitioner of his right to testify and erroneously waiving his right to testify (ground nine).  While Petitioner raised these grounds in his third motion for post conviction relief, he also raised ground nine and a portion of ground eight in his second motion for post conviction relief.[11]  Ex. D at 4-9.  The trial court denied the motion on the

---

[10] To the extent that Petitioner's claims center upon state law issues, they present questions relating purely to the application of state law and, as such, do not present an issue for federal habeas relief.  See Amended Response at 16.

[11] Petitioner's ineffectiveness ground concerning counsel's failure to strike a retired policeman from the jury was sufficiently raised in his second motion for post conviction relief; however, any remaining portions of the ground concerning counsel's failure to strike unnamed and allegedly biased and hostile jurors are procedurally defaulted for the reasons set forth in Section VII.A.

merits, and the appellate court per curiam affirmed. Ex. D at 10; Ex. W.

These grounds should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted). Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.

The record reflects the following relevant facts with respect to Petitioner's decision to not testify. After the State rested its case and the trial judge had denied Petitioner's motion for judgment of acquittal, defense counsel expressed his concern in

ensuring that the court informs Petitioner of his right to testify and that Petitioner understands his choice.   Tr. at 179.   The court then questioned Petitioner, and an extensive colloquy ensued. Petitioner affirmed that he had discussed the matter with his attorney and that his attorney had informed him that he has a right to testify on his own behalf.   Id. at 179-80.   Further, he acknowledged that he was informed of his right to remain silent and that he had had sufficient time to discuss the matter with his attorney.   Id. at 180.   Petitioner had not discussed the decision with his family members, but stated that "if it's the best recommendation of my attorney, I'll go along with that right now." Id.   He confirmed that his attorney had advised him of the reasons why it would either be appropriate or inappropriate for him to testify.   Id. at 180-81.   Petitioner noted that he would like more time to talk to his attorney, and the trial judge responded that Petitioner would have the next hour and fifteen minutes to further discuss the matter with his attorney.   Id. at 181.

Defense counsel interjected:

> If I could put on the record, Your Honor,
> if I may interrupt you, to the extent that Mr.
> Snell, I'm sure the Court would be aware of;
> has had five previous felony convictions and
> that's the reason we are concerned about his
> taking the stand to testify.

Id. at 181.   Petitioner affirmed that he understood the jury would be aware of those felony convictions if he were to testify.   Id. The trial judge explained "there may be other reasons between the

31

two of you that would cause [defense counsel] to make this recommendation, but it is ultimately [Petitioner's] decision." Id. Petitioner concluded that it was his decision to not testify on his own behalf. Id. at 181-82. The trial judge therefore concluded:

> All right. Then the Court finds that you knowingly and intelligently have waived your right to testify in your own behalf. Of course, you can change your mind, but you should, of course, advise counsel so he can be prepared for that.

Id. at 182.

After the lunch break (id. at 184), the trial judge again inquired as to Petitioner's decision to not testify. Id. at 185. The trial judge stated:

> Before we move forward to the instruction having to do whether or not the defendant testifies or not, Mr. Snell, when we took the break you were not absolutely certain whether or not you desired to testify; that is, be placed on the witness stand.
>
> Is it your desire now, having more opportunity to confer with your counsel, as well as I understand other counsel's come in and spoken to you, as well, Mr. Green, - did he talk to you, as well?

Id. at 185-86. Petitioner affirmed. Id. at 186. The trial judge explained the importance of Petitioner's decision:

> So what is your decision now as to whether or not you desire to testify or not? And let me tell you the reason I'm asking you these questions is not to scare you or to add a greater emphasis to it, it's just a right you have and I have to be certain that it's a right that you're giving up voluntarily, knowingly and intelligently.

Id. at 186.

Petitioner clarified his understanding of his decision, stating:

> Yes, Your Honor, from my understanding, it's going to be allowed to be previewed that I have five felony convictions.

Id. The trial judge responded that, if he in fact has five felony convictions, he can be asked that question and he will have to give an honest answer. Id. Defense counsel also explained that the prosecutor, in closing argument, "could emphasize" the fact that he had prior felony convictions. Id. at 186-87. Petitioner concluded "[t]hat blocks me from going to the stand . . . ." Id. at 187. Petitioner then confirmed that it was his desire to not testify on his own behalf. Id.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that counsel's errors actually had an adverse effect on the defense. Here, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. These ineffectiveness claims are without merit. See Amended Response at 27-28, 29.

33

## VIII. Conclusion

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this _11_ day of October, 2005.

_____
UNITED STATES DISTRICT JUDGE

sc 10/6
c:
Frederick L. Snell
Ass't Attorney General (Dakan)

34